**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHARON SERIANNI,**

                                        **Plaintiff,**

        **vs.**                                    **6:07-CV-250**
                                                  **(NAM)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

Olinsky & Shurtliff, Esq.                 Jaya Shurtliff, Esq.
One Park Place
300 South State Street, 5th Fl.
Syracuse, New York 13202
_Attorneys for Plaintiff_

Richard Hartunian                         Vernon Norwood, Esq.
United States Attorney                    Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
_Attorney for Defendant_

**Norman A. Mordue, Chief U.S. District Judge:**

                **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Sharon Serianni brings the above-captioned action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) of the Social Security Act, seeking a review of the Commissioner of Social

Security's decision to deny her application for disability benefits.

## II.     BACKGROUND

On October 23, 2003, plaintiff protectively filed an application for Disability Insurance

Benefits ("DIB").  (Administrative Transcript at p.75).[1]  Plaintiff was 52 years old at the time of

her application and alleged an inability to work due to an injury to her right hand, tendinitis, de

Quervain syndrome and trigger thumb.[2] (T. 93).  Plaintiff previously worked as a card dealer in a

casino and a factory worker in a distribution center. (T. 93).

On February 24, 2004, plaintiff's application was denied and plaintiff requested a hearing

by an ALJ which was held on November 18, 2004.  (T. 32, 41).  On March 4, 2005, the ALJ

issued a decision denying plaintiff's claim for disability benefits.  (T. 41-50).  On June 22, 2005,

the Appeals Council remanded the matter.[3]  (T. 61).  A second hearing was held on January 4,

2006. (T. 13).  On June 30, 2006, the ALJ issued a decision denying plaintiff's claim for disability

benefits.  (T. 13-21).  The Appeals Council denied plaintiff's request for review on February 16,

2007, making the ALJ's decision the final determination of the Commissioner. (T. 4-9).  This

action followed.

## III.     DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to

individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

---

[1]  "(T. )" refers to pages of the administrative transcript, Dkt. No. 2.

[2]  de Quervain Syndrome is painful tenosynivitis due to relative narrowness of the common tendon sheath of the thumb muscles.  *Dorland's Illustrated Medical Dictionary,* 539, 1222, 1223 (31st ed. 2007).

[3]  The Appeals Council directed the ALJ to re-evaluate plaintiff's residual functional capacity with an emphasis on the degree of limitation in repetitive action and to supplement the vocational expert testimony based upon the reassessed limitations.

impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

On June 30, 2006, the ALJ found at step one that plaintiff had not worked since November 15, 2001. (T. 14). At step two, the ALJ concluded that plaintiff suffered from de Quervain syndrome, right trigger thumb, epicondylitis of the right elbow and calcific tendinitis/bursitis of the right shoulder which qualified as a "severe impairments" within the meaning of the Social

Security Regulations (the "Regulations").[4]  (T. 15).  At the third step of the analysis, the ALJ

determined that plaintiff's impairments did not meet or equal the severity of any impairment

listed in Appendix 1 of the Regulations.  (T. 15).  The ALJ found that plaintiff had the residual

functional capacity ("RFC") to, "lift/carry up to 20 pounds occasionally and ten pounds

frequently provided her left upper extremity supports the bulk of the weight and her right upper

extremity is used only as a guide or aide, can sit, stand, walk, climb, stoop, squat, balance, or

crouch without limitation, can grasp, handle, or finger with her right upper extremity only

occasionally, and can grasp, handle or finger with her left upper extremity without restriction".

(T. 18).  At step four, the ALJ concluded that plaintiff did not have the residual functional

capacity to perform any of her past relevant work.  (T. 20).  The ALJ obtained the testimony of a

vocational expert to determine whether there were jobs plaintiff could perform.  Based upon the

vocational expert's testimony and the Medical-Vocational Rules (the "Grids"), the ALJ concluded

at step five, that there were jobs existing in significant numbers in the national economy that

plaintiff could perform such as work as counter clerk and tanning salon attendant.  (T. 18).

Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social

Security Act.  (T. 21).

     In seeking federal judicial review of the Commissioner's decision, plaintiff argues that:

(1) the ALJ erred when he found plaintiff's depression and anxiety non-severe without ordering a

consultative psychiatric examination; (2) the ALJ failed to properly apply the treating physician

rule; (3)  the RFC determination by the ALJ is not supported by substantial evidence; (4) the ALJ

relied upon the vocational expert's response to a defective hypothetical; and (5) the ALJ's

---

[4] Epicondylitis is an inflammation of the tissues adjoining the humerus ("tennis elbow").  *Dorland's* at 637.

reliance upon the Medical-Vocational Rules as "additional support" to the vocational expert testimony was improper.  (Dkt. No. 14).

## A.      ALJ's Assessment at Step 2

Plaintiff argues that the ALJ erred when he determined that plaintiff's depression and anxiety were not severe impairments.  Plaintiff also contends that the ALJ neglected his duty to fully develop the record when he failed to order a consultative psychiatric examination.  (Dkt. No. 14,  p. 1).  The Commissioner disagrees noting that none of plaintiff's treating or examining sources observed any psychiatric limitations.  (Dkt. No. 15, p. 10).

### 1.      Severity of Depression and Anxiety

Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the severity of her impairment.  *See* 20 C.F.R. § 404.1520(c).  An impairment is severe if it significantly limits physical or mental abilities to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment."  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, 2005 WL 2249771, at *12 (S.D.N.Y. 2005).  "[A]n impairment is considered 'not severe' if it is a slight abnormality that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."  *Matejka v. Barnhart*, 386 F.Supp.2d 198, 208-09 (W.D.N.Y. 2005) ("an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities").  Evidence must demonstrate that the condition prevented plaintiff from pursuing gainful activity.  *See Iannopollo v. Barnhart*, 280 F.Supp.2d 41, 47 (W.D.N.Y. 2003).  A

condition that improves and is repairable may not be considered a disability for purposes of disability benefits.  *See Pennay v. Astrue*, 2008 WL 4069114, at *4 (N.D.N.Y. 2008).

A diagnosis of depression, without more, does not suggest that a plaintiff's depression severely impairs her performance of any major life activity.  *See Torres v. Astrue*, 550 F.Supp.2d 404, 411 (W.D.N.Y. 2008).  The medical evidence must show that depression and anxiety preclude a plaintiff from performing basic mental work activities.  *See Snyder v. Astrue*, 2009 WL 2157139, at *4 (W.D.N.Y. 2009).  Moreover, evidence that medication provides relief from the severity of a mental condition can provide substantial evidence to support a finding that a plaintiff is not disabled.  *Pennay*, 2008 WL 4069114, at *5.

In this matter, plaintiff alleges that the medical evidence supports a finding that the impairments are severe as she was diagnosed with depression and has been prescribed medication for depression and anxiety since 1999.  Moreover, plaintiff claims that she provided testimony as to the debilitating effects of her anxiety.  In November 1999, four years prior to the onset of plaintiff's disability, plaintiff was treated at St. Elizabeth Community Health Center by Jasmine Sulaiman, M.D.[5]  Plaintiff complained of "stress and anxiety".  Dr. Sulaiman stated, "[t]he patient should needs [sic] a break from work, which she has reluctantly agreed to for one day.  Papers were given for this.  The ideal medicine for the patient is to start on Paxil, sometime later, after one or two weeks, once this problem settles down".[6]  (T. 181).  In December 1999, plaintiff returned to Dr. Sulaiman and claimed that she had been taking "samples of Paxil" and felt better on the medication. (T. 182).  Dr. Sulaiman recommended that plaintiff continue with the

---

[5] The record does not indicate whether or not Dr. Sulaiman specialized in any area of medicine.

[6] Paxil is used to treat depressive, obsessive-compulsive, panic, and social anxiety disorders; administered orally.  *Dorland's* at 1405, 1419.

medication and provided plaintiff with a prescription and more samples. (T. 182). In August 2001, Dr. Sulaiman noted that plaintiff was "doing good on Paxil". (T. 184).

For nearly four years, between August 2001 and May 2005, plaintiff did not receive any treatment for depression or anxiety. Plaintiff alleges that she became disabled on November 15, 2001. On May 23, 2005, plaintiff returned to Dr. Sulaiman. (T. 176). Plaintiff complained of being depressed and advised that she was taking Paxil from her friend. (T. 176). Dr. Sulaiman diagnosed plaintiff with depression and gave her a prescription for Paxil and cautioned plaintiff that if she stopped smoking, she could afford the medication. (T. 176).

In November 2005, plaintiff sought treatment with Dr. Francis Constantine at the St. Elizabeth Medical Group.[7] (T. 196). Dr. Constantine noted that plaintiff complained of a "significant" history of depression and claimed that she was taking Paxil "on and off" from one of her friends due to financial constraints. (T. 196). Dr. Constantine diagnosed plaintiff with depression and provided plaintiff with a prescription for Paxil. (T. 196). In December 2005, plaintiff claimed that she was taking Paxil as prescribed. Dr. Constantine did not address depression or anxiety in his "Assessment/Plan". (T. 199). On January 13, 2006 and February 10, 2006, plaintiff followed with Dr. Constantine but his records are devoid of any mention of depression or anxiety or any indication that plaintiff was taking Paxil. (T. 211, 215).

In this case, the ALJ concluded that:

> The claimant testified that she experiences depression and anxiety. However, the record does not show a medically determinable psychiatric impairment. (T. 15).

Based upon the record, the ALJ's determination is supported by substantial evidence.

---

[7] The record does not indicate whether or not Dr. Constantine specialized in any area of medicine.

When plaintiff applied for disability benefits, she did not allege any disabling mental impairment. (T. 83).  Plaintiff admitted that she was never examined or treated by a psychologist, psychiatrist or counselor (T. 279) and was never referred to a mental health specialist by any of her treating physicians.  Plaintiff had limited and sporadic treatment for depression and anxiety with a gap in treatment of nearly four years.  While Dr. Sulaiman and Dr. Constatine diagnosed plaintiff with depression, neither physician opined that plaintiff could not engage in substantial gainful activity due to her depression or anxiety.  Indeed, plaintiff continued to work from the time she first began treating with Dr. Sulaiman in November 1999 until the onset of her disability in November 2001. Further, the record establishes that Paxil provided plaintiff with relief.  In December 1999, Dr. Sulaiman noted that plaintiff's condition was improved with medication.  During the administrative hearing, plaintiff testified that Paxil helped her and that, "it's not good for me, for me to stop taking it, yes, it does help me".  (T. 278).  Plaintiff fails to offer any evidence that would support the conclusion that Paxil did not effectively treat her symptoms or that she remained severely impaired despite the Paxil.  *See Torres*, 550 F.Supp.2d at 411.

Upon review of the record, the Court finds that there is substantial evidence to support the ALJ's decision that plaintiff's depression and anxiety were non-severe impairments as they did not prevent her from engaging in substantial gainful activity.

### 2.      Duty to Order a Consultative Psychiatric Examination

Under the Social Security regulations, an ALJ has discretion to order a consultative examination where he deems it is warranted.  *Hughes v. Apfel*, 992 F.Supp. 243, 248 (W.D.N.Y. 1997) (citing 20 C.F.R. § 404.1517).  Several courts have held, however, that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where

the record establishes that such an examination is necessary to enable the ALJ to render a decision.  *Id*. (citations omitted).  The regulations require that the ALJ must normally order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved".  *Matejka*, 386 F.Supp.2d at 209 (citing 20 C.F.R. § 404.1519a(b)(4)); *see also Cruz v. Shalala*, 1995 WL 441967, at *5 (S.D.N.Y. 1995) (holding that the right to a post-hearing consultative examination exists only where a claimant's medical sources cannot or will not provide sufficient medical evidence regarding impairment for a determination about whether the claimant is disabled).  An ALJ is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination.  *Cruz*, 1995 WL 441967, at *5.   Where a plaintiff suggests a possible mental impairment, but no treatment has been recommended or received, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment.  *See Haskins v. Comm'r of Soc. Sec.*, 2008 WL 5113781, at *7, n.5 (N.D.N.Y. 2008) ("If the evidence does not support work-related functional limitations resulting from the possible mental impairment, additional mental development is not necessary and completion of a Psychiatric Review Technique Form is not required and review by a psychiatrist or psychologist is not necessary).

In this matter, while the record establishes that plaintiff arguably suffered from some depression and anxiety, there is no evidence that the condition limited her ability to function in any significant way.  As noted, plaintiff had limited treatment for her claims of depression and anxiety by her treating physicians who were not specialized in the area of mental health.  Plaintiff offers no legal basis for her argument that a consultative examination was required or necessary, *see Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir. 1998), but claims that her inability to afford

treatment was a reasonable excuse for failing to seek treatment with a psychiatrist or psychologist.  While it is true that the failure to seek treatment due to finances can negate the inference that the effect of a plaintiff's medical condition is not as great as alleged, *see Latham v. Comm'r of Soc. Sec.*, 2009 WL 1605414, at *12 , n. 15 (N.D.N.Y. 2009), there is no evidence in the record to establish that plaintiff failed to seek mental health treatment for her condition due to financial constraints.

From August 2001 until May 2005, plaintiff did not seek treatment with Dr. Sulaiman.  However, during that time, plaintiff treated with Dr. Michael Tan (an orthopedist) and Dr. Constantine.  Dr. Tan's records do not indicate that plaintiff could not afford medical treatment for depression and anxiety.   Moreover, Dr. Constantine prescribed Darvocet-N, Lipitor and Paxil and his records are devoid of any reference that plaintiff was not taking Paxil, or any other medication, due to financial constraints.  (T. 199).  In May 2005, plaintiff complained to Dr. Sulaiman that she did not have any money for Paxil.  However, Dr. Sulaiman indicated that plaintiff was spending $150 per month for cigarettes and she advised plaintiff that if she, "stops doing that she could always afford the Paxil". (T. 176).

Plaintiff's claim that she could not afford treatment for depression or anxiety does not create ambiguity or conflict requiring the ALJ to order a consultative psychiatric examination.  There is no evidence that plaintiff's depression and/or anxiety affected her ability to function appropriately or independently.  The ALJ was not obligated to send plaintiff, who was represented by counsel, for a consultative examination when the facts did not warrant such an examination.  *Beal v. Chater*, 1995 WL 819041, at *4 (W.D.N.Y. 1995) (the plaintiff presented no objective proof of low back pain and plaintiff failed to keep appointments with physiatrist).

The medical evidence and testimony in the record do not establish that a consultative examination was necessary in order for the ALJ to reach a decision with regard to the severity of plaintiff's depression and/or anxiety. Accordingly, the ALJ's determination that there was no severe mental impairment is supported by substantial evidence.

**B.     Treating Physician Rule**

Plaintiff alleges that the ALJ failed to follow the treating physician rule with regard to Dr. Tan and improperly assigned "little weight" to his opinions without re-contacting Dr. Tan for clarification. Additionally, plaintiff claims that the ALJ erred when he failed to identify the weight, if any, afforded to plaintiff's other treating physician, Dr. Constatine. The Commissioner contends that the ALJ properly afforded Dr. Tan's opinion little weight since it was made in the context of plaintiff' workers' compensation claim and further, that the ultimate finding of whether plaintiff is disabled is reserved for the Commissioner. Moreover, the Commissioner argues that the ALJ was not required to re-contact Dr. Tan as the weight of the medical evidence demonstrated that plaintiff was not disabled.[8]

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). The less consistent an opinion is with the record as a whole, the less weight it is

---

[8] Defendant does not address plaintiff's contention that the ALJ failed to assign weight to Dr. Constatine's opinion.

to be given. *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Soc. Sec.*, 249 F.App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").   An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so. *Barnett v. Apfel*, 13 F. Supp.2d 312, 316 (N.D.N.Y. 1998).   "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (remanding case where the ALJ failed to explain the weight, if any, assigned to the treating physician's opinions) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999)). When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

The ALJ has a "particularly important" duty to develop the record when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. *Devora v. Barnhart*, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002). "There is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report

prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing." *Devora*, 205 F. Supp. 2d at 174 (collecting cases). This obligation includes obtaining the treating physicians' assessments of plaintiff's functional capacity. 20 C.F.R. § 404.1512(e); *see also Hardhardt v. Astrue*, 2008 WL 2244995, at *9 (E.D.N.Y. 2008). Remand is necessary if the ALJ fails to attempt to contact the plaintiff's treating physician to properly determine her RFC. *See Rosa v. Apfel,* 1998 WL 437172, at *4 (S.D.N.Y. 1998); *see also Hopper v. Comm'r of Soc. Sec.*, 2008 WL 724228, at *11 (N.D.N.Y. 2008); *see also Oliveras ex rel. Gonzalez v. Astrue*, 2008 WL 2262618, at *6-7 (S.D.N.Y. 2008) (holding that remand is appropriate even where there is no guarantee that the outcome will change, so that the ALJ can make reasonable efforts to obtain the treating physicians opinion on functional capacity).

In this matter, on December 17, 2001, plaintiff treated with Michael Tan, M.D., an orthopedist, for complaints of pain in her wrist and thumb. (T. 164). Dr. Tan prepared a report for the Worker's Compensation Board and opined that plaintiff was, "totally disabled and unable to work at this time". (T. 165). Dr. Tan reiterated this opinion after he examined plaintiff in January 2002, May 2002, July 2002, September 2002, November 2002, February 2003 and April 2003. (T. 154 - 165). In September 2003, Dr. Tan noted that plaintiff had, "a combined disability of 10% in reference to the hand". (T. 153). On October 16, 2003, Dr. Tan noted that plaintiff had a moderate permanent partial disability affecting her RUE".[9] (T. 152). Dr. Tan reiterated that opinion in January 2004, March 2004, May 2004, June 2004 and July 2004 . (T. 200 - 209). Dr. Tan did not provide an assessment of plaintiff's functional limitations in a Medical Source Statement or any other record or report.

---

[9] RUE is an abbreviation for "right upper extremity". http://www.medilexicon.com (last visited January 4, 2010).

On November 7, 2005, plaintiff was examined by Dr. Constaine for complaints of low back pain and right arm pain. (T. 196). Dr. Constaine prescribed Darvocet-N and requested records from Dr. Tan.[10] (T. 196). On December 15, 2005, plaintiff returned to Dr. Constaine complaining of right shoulder and neck pain. (T. 199). Dr. Constaine recommended x-rays of the right shoulder and chest. On January 13, 2006, plaintiff followed with Dr. Constaine for worsening right shoulder pain. (T. 211). Dr. Constaine noted that x-rays revealed calcific tendinitis. Dr. Constaine diagnosed plaintiff with right rotator cuff tendinitis and referred plaintiff for orthopedic surgery. (T. 211). Dr. Constaine did not provide an assessment of plaintiff's functional limitations in a Medical Source Statement or any record or report.

In the decision, the ALJ noted that Dr. Tan, "stated that the claimant is 'totally disabled' and unable to work". (T. 17). However, the ALJ assigned "little weight" to Dr. Tan's statement concluding that, "[t]he ultimate determination whether a claimant is disabled and unable to work is reserved to the Administrative Law Judge". Further, the ALJ noted:

> It is obvious that Dr. Tan's opinions were made for the purposes of the claimant's workers' compensation claim. The New York State Workers' Compensation Board applies a different definition of "disability" than the definition contained in the Social Security Act. (T. 17).

The ALJ acknowledged plaintiff's treatment with Dr. Constaine but failed to assign any weight to Dr. Constaine's opinions:

> There is no medical opinion in the record that [plaintiff's osteopenia] in and of itself causes any symptoms. Dr. Constaine, in discussing [the results of diagnostic tests] with the claimant, was primarily concerned that the claimant's continued smoking created a risk that the osteopenia could worsen to become osteoporosis, which would

---

[10] Darvocet is a mild narcotic analgesics prescribed for the relief of mild to moderate pain, with or without fever. *Dorland's* at 479.

increase the risk of suffering fractures.  (T. 16).

The Court finds that the ALJ failed to properly apply the treating physician rule.
Specifically, the ALJ assigned Dr. Tan's opinions less than controlling weight but failed to
discuss any of the factors outlined in 20 C.F.R. § 404.1527(d)(2).  The ALJ did not identify any
evidence in the record including other medical opinions or clinical findings that were inconsistent
with Dr. Tan's opinions.  Moreover, the ALJ erred when he failed to assign any weight to Dr.
Constatine's opinions without identifying valid reasons for doing so.

The Administrative Transcript does not contain any assessments from any of plaintiff's
treating sources or consultative physicians regarding how plaintiff's impairments affect her ability
to perform work-related activities.  The only assessment of plaintiff's ability to do work related
activities is a Physical Residual Functional Capacity Assessment prepared by a disability analyst
on February 20, 2004.[11] (T. 170).   The ALJ specifically acknowledged and assigned "little
weight" to this assessment as it was not prepared by a physician and not prepared based upon all
the evidence in the record.  Based upon the sparse medical record, the ALJ had an affirmative
duty, even if plaintiff was represented by counsel, to develop the medical record and request that
plaintiff's treating physicians assess plaintiff's functional capacity.  The ALJ's failure to seek
medical evaluations, including an assessment of plaintiff's residual functional capacity, from
plaintiff's treating sources was error.  The ALJ's failure to apply the proper standard to assess
plaintiff's ability to meet the physical demands of work, deprived plaintiff of an adequate hearing.
 *Rosado,* 290 F.Supp.2d at 441-442 (citing *Echevarria v. Sec'y of Health and Human Servs.,* 685
F.2d 751, 755 (2d Cir. 1982)).

---

[11] The name of the analyst is illegible.

Upon remand, the ALJ should contact Drs. Tan and Constatine regarding plaintiff's functional limitations.  Further, upon remand, the ALJ is directed to develop the record to ascertain the proper amount of weight to accord Drs. Tan and Constatine's opinions under 20 C.F.R. § 416.927(d).  *See O'Halloran v. Barnhart*, 328 F.Supp.2d 388, 394 (W.D.N.Y. 2004); *see also Donato v. Sec'y of Dep't of Health and Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983) (holding that the ALJ has the duty to not only develop the proof but carefully weigh it).

## C.    Residual Functional Capacity

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

Plaintiff alleges that the RFC assessment is not supported by substantial evidence as the ALJ failed to comply with the requirements of SSR 96-8p and further, because the RFC

assessment contained no mental limitations.[12] (Dkt. No. 14, p. 1).  The Commissioner argues that the ALJ properly assessed plaintiff's credibility and further, that the RFC assessment was supported by substantial evidence.[13] (Dkt. No. 15, pp. 12, 14).

Prior to determining plaintiff's RFC, the ALJ summarized plaintiff's medical treatment and the opinions of consultative examiners.  At the request of the agency, plaintiff submitted to three orthopedic consultative examinations with Dr. Steven Hausmann, Dr. Donald Paarlberg and Dr. Myra Shayevitz.  In May 2002, Dr. Hausmann concluded that plaintiff could, "perform sedentary type duty occupations with no repetitive use of the right upper extremity with no repetitive gripping, pinching or grasping and no lifting greater than 10 pounds". (T 146).   In August 2003, Dr. Paarlberg concluded that plaintiff could, "return to work with a wrist splint with no lifting over 40 pounds, no heavy pushing or pulling and no repetitive use of the hand".  (T. 150).  In February 2004, Dr. Shayevitz prepared a medical source statement and noted, "[t]here is no contraindication to sitting, standing, walking, stair climbing, lifting, carrying or handling small objects with the non-dominant hand, but there is a problem with any heavy or moderate lifting, repetitive lifting and grasping with the dominant hand with increased pain".  (T. 168).

The ALJ failed to assign any weight to the opinions of Drs. Hausmann, Paarlberg or Shayevitz but noted the apparent inconsistencies in their opinions:

> [t]he only significant difference between the opinions of Dr. Hausmann, Dr. Paarlberg and Dr. Shayevitz is the lifting limitation. Given that the claimant has no impairment of her left upper extremity,

---

[12] SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). *Grant v. Astrue*, 2008 WL 2986393, at *9 (N.D.N.Y. 2008).  The Court has already determined that the ALJ properly assessed plaintiff's mental limitations.

[13] Plaintiff does not challenge the ALJ's assessment of plaintiff's credibility.  Therefore, the Court declines to make a determination with regard to that issue.

> it is reasonable to conclude that she can lift/carry 20 pounds occasionally and ten pounds frequently, with her right upper extremity used mainly for guiding purposes. (T. 18).

The ALJ determined that plaintiff had the RFC to:

> the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and ten pounds frequently provided her left upper extremity supports the bulk of the weight and her right upper extremity is used only as a guide or aide, can sit, stand, walk, climb, stoop, squat, balance, or crouch without limitation, can grasp, handle, or finger with her right upper extremity only occasionally, and can grasp, handle, or finger with her left upper extremity without restriction. (T. 18).

Upon review of the administrative record, the Court finds that the RFC determination is not supported by substantial evidence. As discussed above, the record lacks any Medical Source Statement from any treating physician and thus, the ALJ failed to properly apply the treating physician rule when he failed to contact both Dr. Tan and Dr. Constatine. Standing alone, that error would render the RFC determination improper and warrant remand. However, the ALJ committed additional errors in assessing plaintiff's RFC. First, while the ALJ discussed some treatment and evidence, it is unclear on what specific evidence the ALJ relied in making the RFC determination. Although the ALJ seemingly relied upon the assessments of the consultative physicians, the ALJ failed to assign weight to any of those opinions. *Babcock v. Barnhart*, 412 F.Supp.2d 274, 281-283 (W.D.N.Y. 2006) (citing *Torregrosa v. Barnhart*, 2004 WL 1905371, at *6 (E.D.N.Y. 2004)) (finding that in the absence of a treating source's opinion, there is more reason for the ALJ to discuss the opinions of the examining doctors and to explain the weight afforded to those opinions). The ALJ's failure to explain the weight he gave to the consultative opinions was legal error requiring remand. *See White v. Sec'y of Health & Human Servs.*, 910

F.2d 64, 65 (2d Cir. 1990) (holding that if an ALJ fails to provide the basis for his RFC determination, a reviewing court may vacate that decision).

Second, it is a fundamental tenet of Social Security law that an ALJ cannot selectively pick and choose only parts of a medical opinion that support his determination. *See Nix v. Astrue*, 2009 WL 3429616, at *6 (W.D.N.Y. 2009). In this case, the ALJ chose to ignore parts of the consultative opinions while crediting other portions of the opinions. Notably, Dr. Hausmann opined that plaintiff could perform "sedentary type duty" with no lifting "greater than 10 pounds". The ALJ failed to acknowledge that opinion or explain why he assigned no weight to that assessment. The ALJ should have reconciled the different aspects of the consultative opinions or explain why he rejected portions that were seemingly favorable to plaintiff. *See Thompson v. Apfel*, 1998 WL 720676, at *5 (S.D.N.Y. 1998). Equally troubling is the fact that while the ALJ gave "little weight" to the Physical Residual Functional Capacity Assessment completed by the disability analyst, the ALJ essentially adopted the limitations set forth in that opinion when he concluded that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.[14] (T. 17).

Accordingly, the Court finds that the RFC determination is not supported by substantial evidence. Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." *Williams v. Callahan*, 30 F.Supp.2d 588, 594 (E.D.N.Y.

---

[14] The analyst concluded that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; could stand and/or walk about 6 hours in an 8 hour workday; and sit for about 6 hours in an 8 hour workday with unlimited pushing and/or pulling. (T. 171).

1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39(2d Cir. 1996)).  Upon remand, the ALJ must correct

these errors and comply with the requirements of S.S.R. 96-8p.

**D.       Vocational Expert and Use of the Grids**

Plaintiff argues that as the ALJ's RFC finding did not accurately reflect plaintiff's

limitations, the vocational expert testimony was based upon an incomplete hypothetical question.

(Dkt. No. 14, p. 2).  Moreover, plaintiff argues that the ALJ improperly relied upon the Grids

pertaining to "light work" as additional support to the vocational expert testimony.  Plaintiff

claims that substantial evidence does not support the determination that plaintiff is capable of the

exertional and non-exertional demands of "light work".   The Commissioner argues that

hypothetical posed to the expert accurately reflected the RFC determination.  Further, the ALJ's

use of the Grid Rules as a framework was based upon substantial evidence.  (Dkt. No. 15, pp. 16-

17).

A hypothetical question that does not present the full extent of a claimant's impairments

cannot provide a sound basis for vocational expert testimony.  *Bosmond v. Apfel*, 1998 WL

851508, at *8 (S.D.N.Y. 1998) (citation omitted); *see also De Leon v. Sec'y of Health and Human

Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).  If a hypothetical question does not include all of a

claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational

expert's response cannot constitute substantial evidence to support a conclusion of no disability.

*Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. 1996).  The "[p]roper use of vocational

testimony presupposes both an accurate assessment of the claimant's physical and vocational

capabilities, and a consistent use of that profile by the vocational expert in determining which

jobs the claimant may still perform."  *Lugo v. Chater*, 932 F.Supp. 497, 503 (S.D.N.Y. 1996).

20

Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In this matter, the ALJ sought the testimony of a vocational expert and also utilized Medical-Vocational Rules 202.15 and 202.22.[15]  The ALJ noted that the Grids provided, "additional support" to conclude that the claimant had the RFC to perform jobs existing in significant numbers in the national economy.  (T. 20).  As discussed above, the ALJ's RFC is not supported by substantial evidence as the ALJ failed to apply the treating physician rule and failed to comply with the requirements of SSR 96-8p.  This necessarily affected both the vocational hypothetical and the ALJ's reliance upon Grids 202.15 and 202.22 to find plaintiff "not disabled" at step five of the evaluation process.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (stating that testimony of a vocational expert is only useful if it addresses the particular limitations of the claimant); *see also Compo v. Comm'r of Soc. Sec.*, 2009 WL 2226496, at *10 (N.D.N.Y. 2009) (holding that significant errors in earlier steps in the disability evaluation naturally affected step five).

**IV.    CONCLUSION**

For the foregoing reasons, it is hereby

---

[15] Section 202.00 is the Grid for light work.  Light work is defined as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Date:   March 1, 2010

_____
Norman A. Mordue
Chief United States District Court Judge